John T. Casey, J.
The issue in this article 78 proceeding is the legality of an order of the respondent, the Public Service Commission (PSC) dated May 20, 1975 and extended to all the telephone companies of New York State on September 10, 1975. In final form the order directs those companies to notify their subscribers 72 hours in advance of releasing subscriber toll records pursuant to a legislative, judicial or administrative subpoena or summons unless the obligation to do so is dispensed with by court order obtained by the issuer; and which further requires telephone company counsel, if the toll records are sought in less than 72 hours or the subpoena or summons in some manner does not conform to the PSC’s policy, to seek judicial modification thereof, including a limitation of any order of nondisclosure to 90 days.
The petitioner law enforcement agencies complain that such disclosure severely and seriously hinders and impedes their investigation of criminal or other illegal activity and because the issuer is as often as not an out-of-State agency, the telephone companies further urge that the requirement that their counsel move in regard to the subpoena or summons in the out-of-State courts of issuance in order to carry out the commission’s policy is an intolerable burden that should alone stamp the order invalid.
The attack, therefore, is on the authority of the PSC to *1060 promulgate any such order and even if authority be found, then the arbitrariness of the provisions of the order itself, as well as the procedures adopted by the PSC in finalizing and adopting it.
The order had its genesis in a policy established by the New York Telephone Company on March 1, 1974 on its own and without commission authorization or approval. This policy provided that toll billing records would be released only upon receipt of a civil or criminal subpoena or summons valid on its face. Upon such receipt the company would immediately attempt to notify the subscriber whose records were to be produced. Written notification to the subscriber would follow within 24 hours of receipt of the subpoena. If, however, the subpoena served was accompanied by a written certification from the issuing agency that the investigation involved a felony and disclosure to the subscriber would jeopardize it, the subscriber would not be notified for a 90-day period and this period was subject to further extension of similar periods should a new written certification be received. It has not been made clear why the adoption of such policy by the New York Telephone Company was thought necessary in the first place. Vague references are made to the company’s concern with the "right of privacy” of the individual subscriber and to discourage lawsuits against it and perhaps more accurately to be "on the safe side” if a subscriber should attempt to sue because his toll billing record had been disclosed.
As long as this policy required no divulgence.for at least 90 days, if the issuer certified that a felony investigation was involved and would be jeopardized, the issuing investigative agencies controlled the situation completely and had no cause to complain. When the subject order was promulgated by the PSC, however, that control was lost and disclosure to the subscriber became automatic if the issuer did not obtain a court order to prevent it, and the telephone companies bore the burden of moving in the court within whose jurisdiction the issuing agency is located to quash or modify such subpoenas and summons if they did not reflect the commission’s policy.
Once again, justification for such order is sought under the individual subscriber’s right to personal privacy and the commission’s concern with it and to insure that each subscriber is afforded an opportunity to consult with counsel to determine the rights each might have under the circumstances.
*1061 Thus, the PSC seeks a dismissal of the petition which would, of course, confirm the validity of the order and its procedures on the basis of PSC concern with the individual telephone company’s subscribers’ constitutional right to privacy and to counsel when a subpoena of that subscriber’s toll records requires their production.
Nowhere does the commission claim that under the prior policy of the New York Telephone Company, or indeed before any policy was adopted, that there was ever any actual violation of the right of individual privacy by that telephone company’s failure to disclose to the subscriber that his records had been subpoenaed. The commission’s claim is rather what "might” happen. What "might” happen is strictly conjecture and forms no rational basis for a valid order. But if a violation of a subscriber’s rights occurs through the negligence of the telephone company or otherwise, then the telephone company should be required to answer the violation directly in a suit by the subscriber. True, the subscriber may not know that his toll records have been subpoenaed any more than any suspect might know that he is being investigated. But it is not the concern of the PSC to require the subscriber to be informed at that stage. The Public Service Law, not the Constitution, circumscribes the area over which the PSC can exercise jurisdiction and control. In general, this area is to insure proper and adequate telephone service at reasonable cost to the public. That in doing so the individual constitutional rights of the individual subscribers to such service must be safeguarded by the Commission does not appear. Specifically, the authority of the PSC and its jurisdiction, supervision, powers and duties extend under the Public Service Law (§ 5, subd 1, par d) to every telephone line [within this State] and to the persons or corporations owning, leasing or operating the same specifically with respect to telephone corporations the PSC has general supervision over the lines and the general condition, capitalization, franchises and manner in which the lines and property are leased, operated or managed, conducted and operated with respect to the adequacy of and the accommodation afforded by their service and also with respect to the safety and security of their lines and property and with respect to their compliance with all provisions of law, orders of the commission, franchises and charter requirements; and under section 94 of such law, subpoena power, hearing power and general supervision of all telephone corpo *1062 rations, their lines, franchises and general conditions and manner of operation including the power to examine their books and records. Other provisions of the Public Service Law (§ 91, subd 1; § 95, subd 2; § 96, subd 1; § 97, subd 2) give the commission broad discretion to determine the just, reasonable, adequate and efficient telephone service to the public.
Conceding the PSC all the authority granted to it statutorily and all the powers incidental and necessary to effect the duties and obligations imposed, the subject order is clearly concerned with nonutility activity. It is basic that an affirmative obligation exists on behalf of the commission to insure that the public utilities under its supervision act in the best interests of the public. (Matter of County of Orange v Public Serv. Comm., 44 AD2d 103.) That mandate means the public generally — the public as a class — and the protection extends to those services usually and necessarily performed by such utility (telephone companies in this case). The concern and extent of the PSC with telephone subscriber’s individual constitutional rights can neither be concluded nor implied. Those individual constitutional rights are matters for the courts, not for an administrative or regulatory agency. No expectation of individual privacy attaches to toll records. (Katz v United States, 389 US 347.) Toll records contain no personal conversations of the subscriber but only the places and telephone numbers outside his area called by him and the charges therefor. As such, toll calls are merely records kept in the due course of telephone company business for billing purposes and are as disclosable as any ordinary business records so kept. (Nolan v United States, 423 F2d 1031, cert den 400 US 848.) No privilege can be said to attach to them; nor do they fall within the constitutionally protected area of the Fourth Amendment. (United States v Baxter, 492 F2d 150, cert den 416 US 940.) The subscriber has no standing to challenge a subpoena for his toll billing records since these are the property of the telephone company and not of the subscriber. (Donaldson v United States, 400 US 517.)
Clearly the only person who can benefit by such an order, although he is not entitled to be so benefited either constitutionally or statutorily, is the subscriber whose records have been subpoenaed and the extent of the benefit to him is to know that his tolls are being investigated so that his illegal activity, if any, may cease, or be curtailed or changed to other numbers. This notification is in direct opposition to the se *1063 crecy that guards Grand Jury proceedings by statute (GPL 190.25, subd 4) and by custom.
The District Attorney as a public officer and the courts themselves as guardians of individual constitutional rights are not compelled to disclose a Grand Jury proceeding to an individual being investigated. Why should an order of the PSC so provide where the obligation of the PSC can surely be no greater. The subject order cannot be justified, therefore, under the commission’s concern with individual right to privacy even if that were a legitimate concern of the commission.
Nor may the order be justified under the individual subscriber’s constitutional right to be given an opportunity to consult with counsel concerning the subpoenaed records. Individual’s right to counsel does not attach to everyday business dealings and possible investigations. Not even the courts have to insure that a person has a lawyer before he makes a contract. A person may always have a lawyer attend him, of course, but the constitutional right to counsel with which courts are concerned attaches only to the in-custodial interrogation of a suspect. (People v McKie, 25 NY2d 19.) As a personal constitutional right, the right to counsel should not fall within the control and jurisdiction of the PSC, especially where such right would extend far beyond the area prescribed by and for the courts. That right is not inherent in the public interest with which the PSC should be concerned.
The third source of justification for the order is that all the problems of the petitioner law enforcement agencies can be solved by obtaining the court order provided therein dispensing with the notification to the subscriber. It is nowhere apparent what the authority for such an order would be or under what statute it could be obtained. Is it ex parte or on notice to the subscriber? The PSC cannot jurisdictionally compel an agency outside of its control and jurisdiction to apply for a court order just by saying so or make the production of telephone toll records dependent thereon. Courts must issue orders because the Legislature has authorized them under statute — not at the insistence of the PSC. The attempt to so require clearly exceeds the statutory powers of the PSC. The fact those orders have been procured in some cases means nothing for they have never been contested judicially.
Upon all fronts the order complained of herein exceeds the jurisdiction and authority of the PSC and falls outside the *1064 area of its legitimate concern and for these reasons it must be stamped "arbitrary and capricious”.
The final attack is procedural and in view of the determination made herein unnecessary. It may be said, however, that although no formal evidentiary hearing was held by the commission before promulgating the subject order, that each of the petitioners was afforded an opportunity to submit fully its views of the proposed changes. No argument has been advanced in this proceeding that was not advanced in opposition to the proposed changes in the disclosure policy. It cannot be concluded that a more formal hearing, even if held (although such is not required by statute) would have produced any different result. The issues herein are all matters of law and, therefore, require no finding of fact be made at an evidentiary hearing. This court, therefore, rejects the argument that the order was finalized in defiance of procedural due process.
For the reasons advanced above the order of the PSC which is the subject of this controversy is arbitrary and capricious and for that reason the petition is in all respects granted.