OPINION OF THE COURT
Roger J. Miner, J.
Plaintiff-petitioner (Con Edison) challenges the validity of the following portion of an order issued by defendant-respondent (PSC) on February 25, 1977: "All utilities subject to the jurisdiction of this Commission shall discontinue the practice of utilizing material inserted in bills rendered to customers as a mechanism for the dissemination of the utility’s position on controversial matters of public policy.” The challenge is predicated upon claims of First Amendment violation and unconstitutional vagueness.
The inquiry by PSC into the proper scope of leaflets enclosed with utility bills apparently was spawned by complaints addressed to a Con Edison bill insert relating to the need for nuclear power development. The complainants sought a PSC ruling that would permit them to enclose an insert in a future billing presenting their views on nuclear power. They also sought a ruling "that where the billing process has been used for purposes of advocating one side of a political and controversial issue of public importance, the forum of the billing packet must then be opened to contrasting points of view”.
After receipt of the complaint, the PSC, in a separate administrative proceeding, began an over-all review of its policy concerning advertising by regulated utilities. The review culminated in a statement of advertising policy issued on February 25, 1977 and an "Order Implementing Certain Restrictions on Utility Advertising” issued the same date. The order included the bill-insert restriction quoted above. A request for a rehearing by Con Edison and others was denied by PSC order dated July 14, 1977. This order included a determination that a program allowing the expression of all points of view in bill inserts would be too difficult to administer.
In its policy statement and orders the PSC found that it would be unfair to subject ratepayers with differing points of view to the arguments of utilities through the billing mechanism; that the billing mechanism provides a unique means for utilities to present their views to ratepayers and that the use of the mechanism for that purpose would confer an undue advantage; and that due to special limitations, bill inserts should convey only information clearly helpful to consumers.
*315 A long-standing regulation of the PSC provides that expenditures for the purpose of influencing opinion or advancing the political objectives of an electric utility should be chargeable to shareholders in an income deductions account. (16 NYCRR ch II, subch F, art 1, Accounts, Income Accounts, Account No. 426.4.) It is proper to charge such expenditures to shareholders rather than ratepayers and an administrative determination as to the classification of the expenditures is within the discretion of the PSC. (Southwestern Elec. Power Co. v Federal Power Comm., 304 F2d 29, cert den 371 US 924.) However, the order under attack purports to prohibit totally the dissemination of public policy positions by means of bill inserts. The court finds that this prohibition is improper and beyond the authority of the PSC.
It is well settled that commercial speech is protected by the First and Fourteenth Amendments to the United States Constitution. (Bigelow v Virginia, 421 US 809.) The time, place or manner, but not the content, of such speech may be regulated to effectuate a significant governmental interest. (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748; Suffolk Outdoor Adv. Co. v Hulse, 43 NY2d 483.) There can be no question that the ban upon the use of bill inserts constitutes a restriction upon commercial speech.
The PSC contends that compelling interests justify the order, but the arguments advanced in support of this contention are not persuasive. The use of bill inserts does not represent a subsidized means of presenting management’s views, since it is conceded that the cost of mailing would be the same whether or not the inserts were included with the bills. Moreover, the PSC may allocate any increased cost to the proper account. Consumers are not, therefore, required to subsidize views with which they do not agree. (Cf. Abood v Detroit Bd. of Educ., 431 US 209.) The argument that subscribers constitute a captive audience to be protected from receiving certain mailed matter must be rejected, since the mailbox is not a constitutionally protected enclave. (Lamont v Commissioner of Motor Vehicles, 269 F Supp 880; cf. Rowan v United States Post Off. Dept., 397 US 728.)
Although the PSC asserts that alternate channels of communications are open to management, such channels involve more cost, are less likely to reach subscribers and may be less effective. (Linmark Assoc. v Willingboro, 431 US 85.) The claim that bill inserts afford an undue preference or advan *316 tage to management within the meaning of subdivision 3 of section 65 of the Public Service Law is rejected, the cited section being inapplicable here.
The ban on the discussion of "controversial matters of public policy” through the medium of billing inserts presents a vague standard. (Coates v City of Cincinnati, 402 US 611; Grayned v City of Rockford, 408 US 104.) Controversy is defined as an occasion of disagreement or contention. (Webster’s New International Dictionary [3d ed], p 497.) Public policy is the governing policy within a community and is a variable quantity. (Webster’s New International Dictionary [3d ed], p 1836; Black’s Law Dictionary [4th ed], pp 1317-1318.) It is apparent that great difficulty may arise in attempting to categorize a particular matter as a controversial question of public policy. The fact that the PSC has offered to provide advisory opinions as to whether specific issues are included in the ban illustrates the difficulty of defining the matters prohibited.
The PSC argues that the standard is virtually identical to that approved in Red Lion Broadcasting Co. v Federal Communications Comm. (395 US 367). In Red Lion radio broadcasting regulations implementing the fairness doctrine were under scrutiny. The regulations required radio stations to give reply time to answer any personal attack or political editorial involving a "controversial issue of public importance.” Taking into account past adjudications by the FCC providing added precision to the regulations, the Supreme Court determined that the regulations as a whole, including the quoted phrase in context, were not so vague as to permit the FCC "to vindicate its own idiosyncratic conception of the public interest”. (Red Lion, supra, p„ 395.) In the absence of prior definitions by the PSC and considering the context of the "controversial matters” phrase in the PSC order together with the unique status of the broadcasting industry, the holding in Red Lion cannot be applied to the issue of vagueness in the case at bar.
The PSC maintains that the privilege to disseminate utility bill inserts derives from the privilege of franchised monopoly and therefore may be regulated to assure its exercise in the public interest. Although this may be true as a general proposition, the regulation adopted here totally banning such inserts has no basis in the statutory powers accorded to the PSC. (Matter of City of New York v Public Serv. Comm., 84 *317 Misc 2d 1058, affd 53 AD2d 164; 48 NY Jur, Public Utilities, §9.)
Submit judgment for petitioner-plaintiff.