In the Matter of COUNTY OF ORANGE et al., Petitioners, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Intervenor-Respondent. (Proceeding No. 1.)

In the Matter of HARTWOOD SYNDICATE, INC., Petitioner, and TOWN OF FORESTBURG, Intervenor-Petitioner, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Intervenor-Respondent. (Proceeding No. 2.)

Third Department, March 28, 1974.

*Peter G. Striphas, County Attorney,* for County of Orange, petitioner.

*Joseph G. Owen* for Town of Wallkill and another, petitioners.

*Anthony T. Kane* for Hartwood Syndicate, Inc., petitioner, and Town of Forestburg, intervenor-petitioner.

*Peter H. Schiff* (*J. Michael Harrison* of counsel), for respondent.

*LeBoeuf, Lamb, Leiby & MacRae* (*Carl D. Hobelman, Leon A. Allen, Jr.,* and *Jacob Friedlander* of counsel), for intervenor-respondent.

SWEENEY, J. These are proceedings pursuant to subdivision 1 of section 128 of article 7 of the Public Service Law to review the opinions and orders of the Public Service Commission dated January 25, 1972, March 17, 1972, June 27, 1973, August 24, 1973 (2) and August 28, 1973, which, pursuant to section 121 of article 7 of the Public Service Law, authorized, *inter alia*, the issuance of a certificate of environmental compatibility and pubic need to Consolidated Edison Company of New York, Inc., for the construction of the so-called " east-west leg " of an electric power transmission line, a part of the Southern Tier Interconnection.

In September of 1970 Consolidated Edison Company of New York, Inc. (hereinafter referred to as " Con Edison ") applied for a " certificate of environmental compatibility and public need " pursuant to section 121 of article 7 of the Public Service Law for the construction of a 345,000-volt electric transmission line to traverse portions of Rockland, Orange and Sullivan Counties. One segment, referred to as the " north-south leg ", would emerge from an existing substation at Ramapo in Rockland County and run through a portion of Orange County to a substation then being constructed at Rock Tavern in Orange County. The second segment, referred to as the " east-west leg " would run westward from the Rock Tavern substation through portions of Orange County to the Town of Thompson in Sullivan County. There it would connect with an eastern extension from Binghamton, remaining to be built, of a similar volt line of the New York State Electric & Gas Corporation.

With respect to the " north-south leg ", the Public Service Commission (hereinafter referred to as the " Commission ") reaffirmed its certification of that segment in its March 17, 1972 opinion, but retained jurisdiction to reconsider the issues relating to the " east-west leg " with which we are here concerned. That order was confirmed in all respects by the Appellate Division, Second Department, and its decision was affirmed, without opinion, by the Court of Appeals. (*County of Orange* v. *Public Serv. Comm. of State of N. Y.*, 39 A D 2d 311, affd. 31 N Y 2d 843.)

The Commission issued a subsequent opinion granting a rehearing with respect to the east-west leg. The remanded proceedings were to be held chiefly " for the purpose of receiving testimony with respect to the effect construction of the East-West route of the transmission line * * * may have on the site of the old Delaware and Hudson Canal near Cuddeback-ville in the Town of Deerpark, Orange County ". The Com-

mission ultimately issued its opinion granting Con Edison a certificate of environmental compatibility and public need for the east-west leg along a route proposed by the staff of the Commission, with certain conditions designed to reduce adverse environmental impact in designated sensitive areas. A rehearing was denied and these review proceedings ensued.

Subdivision 2 of section 128 of the Public Service Law circumscribes the scope of our review and the following is a fair distillation of the issues for our determination: (1) whether there is substantial evidence to support the Commission's finding that there is a need for the proposed transmission line; (2) whether it is unlawful, arbitrary and capricious for the Commission to certify a " wholly new " route proposed by the Commission's staff; and (3) whether the certification of the east-west leg is supported by substantial evidence that such route represents the minimum adverse environmental impact, considering the state of available technology and the nature and economics of the various alternatives, and the other pertinent considerations, within the meaning of section 126 of the Public Service Law.

On the issue of need, there is substantial evidence on which the Commission could find a basis of need for the east-west leg of the proposed transmission line. An examination of the record readily demonstrates that by providing this segment of the Southern Tier Interconnection as a link to lines in the Binghamton area and, in turn, with lines in Pennsylvania and the PJM network and from Elmira to lines in Niagara Falls and Canada, the reliability of the bulk power transfer system of the State will be greatly improved. By allowing energy to be transferred back and forth from a remote area to an area of particularly high demands at a particular time, this interconnection of systems will assure against the power shortages and interruptions which have plagued the State during recent years.

As for the Commission's authority to certify a " wholly new " route proposed by its staff, the statute is clear and explicit. Section 126 provides:

" 1. The commission shall render a decision upon the record either granting or denying the application as filed *or granting it upon such terms, conditions, limitations, or modifications of the construction or operation of the facility as the commission may deem appropriate.* * * *

" 2. If the commission determines that the location *of all or a part of the proposed facility should be modified, it may condi-*

*tion its certificate upon such modification* " (emphasis added). Furthermore, under subdivision 2 of section 124 the Commission staff has an affirmative obligation to act in the best interests of the public. The proposal by the staff of a new or modified route is clearly consistent with that obligation.

We thus reach the final question as to whether there is substantial evidence supportive of the Commission's determination that the certified route is in the public interest and the one most desirable in the light of all relevant factors. Three general routes were proposed and considered by the Commission. The proposed Con Edison route would follow for a short distance an abandoned railroad right of way out of the Rock Tavern substation, then traverse partially wooded and rolling terrain, most of it farmland, through the Towns of Hamptonburgh and Wallkill and proceed into Sullivan County by crossing the Shawangunk Ridge near and along Route 17, going through the Town of Mamakating to the Town of Thompson.

The route proposed by the staff of the Commission would leave the Rock Tavern substation and follow an abandoned railroad right of way into the Town of Hamptonburgh to a point near the Wallkill River. It would then follow an active railroad right of way to a point north of the City of Middletown where it would transfer to an abandoned railroad right of way and continue into the Town of Mount Hope. The route would then parallel an existing 69,000-volt transmission line as it crossed the Shawangunk Ridge and then pass through the Basher Kill Valley well south of the wetlands. It would then pass to the south of Cuddebackville in the Town of Deerpark, cross the Neversink River, adjoin an abandoned railroad right of way along the valley of the Upper Neversink and then pass through heavily wooded, undeveloped terrain through the community of Melody Lake and reach its terminus in Sullivan County.

Although Orange County first and foremost recommended that the entire line be placed underground, the aboveground alternate route proposed would basically follow the staff route until it reached a point northeast of Middletown from which point it would proceed north running parallel to Route 17 and cross the Shawangunk Ridge near the same location as the Con Edison route.

As to the Con Edison proposal, the Commission objected to its breaching new territory suitable for residential and other high quality uses. It was most critical of its " skylining " across the Shawangunk Ridge and along Route 17 at the gateway to the vacation areas in Sullivan County. The Orange

County route was also found to " thrust into Sullivan County at the entry to the vital resort area.". The Commission's choice of the staff route was predicated upon two advantages over the other proposals. First, it follows existing rights of way for virtually the entire distance; and second, unlike the Con Edison and Orange County routes, its crossing of the Shawangunk Ridge and entry into Sullivan County is well removed from Route 17. Since the staff route, in the main, parallels existing railroad rights of way which were laid out to cling to low contours and to avoid peaks and abrupt grade changes, " sky-lining " can be greatly reduced. We cannot say that the Commission's determination to avoid placing these transmission lines along Route 17 as it enters the Sullivan County resort area is unreasonable. We conclude that there is sufficient support in the record for the Commission's finding that the location of this proposed facility along the staff route generally represents the minimum adverse environmental impact, all relevant factors considered. We do not agree, however, that the staff route insofar as it provides for the use of overhead facilities through a proposed county park and an already designated national historic landmark on the Delaware and Hudson Canal near Cuddebackville represents an acceptable minimum adverse environmental impact under the circumstances. In the light of the underlying statute, and under the facts presented by this record, the decision of the Commission in refusing to order undergrounding of the transmission lines through this segment of the proposed staff route is, in our opinion, arbitrary and unreasonable and constitutes an abuse of discretion.

Implicit in the Commission's determination to remand the proceedings for testimony concerning the environmental effect which the proposed staff route might have upon the historic site and proposed park is the principle that there is an essential public interest in avoiding intrusions by such overhead facilities into park lands, wildlife preservations, historical sites and unusual scenic vistas. There is testimony by a staff expert recommending that any portion of an overhead line in an area where extraordinarily high qualitative or quantitative values are involved should be constructed underground. Although it was his opinion that there were no such areas involved in the proposed staff route which would justify undergrounding any portion thereof, he conceded that the visible remnants of the Delaware and Hudson Canal system near the old Roebling suspension bridge across the Neversink River were easily worthy of being considered for restoration.

Giving little weight to the testimony concerning development of these specific areas, the Commission after rehearing concluded it would be inappropriate to deviate from its already formulated routing proposal. We cannot agree that the plans for the canal restoration project and the general purpose park should be given such little weight. Our review of the record reveals abundant evidence that the numerous proponents of these projects were seriously prepared to move them ahead to fruition. In light of the Commission's finding that the County of Orange seemed '' quite serious in its plans to develop the park '', specifically recognizing its '' highly progressive '' development of other park facilities in the county, it is difficult to reconcile its determination to afford little weight to the future development of this area. Nor can we agree that major significance should be attached to the fact that plans for the restoration of the canal were not finalized and the development of the proposed park had not been master planned. The park area was well defined and identified. The entire site, including the canal and the park, would contain approximately 378 acres, some 78 acres owned by the Orange and Rockland Utilities, Inc. to be donated by the Citizen's Foundation. An option to purchase these 78 acres immediately adjacent to the one-mile canal site was exercised by the Citizen's Foundation by the close of the hearings. Substantial pledges toward the cost of restoration of the canal had been received. The County Department of Parks, Recreation and Conservation, having made the park project its No. 1 priority, had a tentative pledge of $300,000, with authority given the county to apply for a matching grant from the Federal Government to cover the estimated cost of acquisition of the remaining 300 acres.

The Commission found that shifting the route either to the north or to the south would cause considerably more environmental damage than routing it through the proposed park area. Undergrounding was similarly found to be inappropriate, since '' the limited nature of any possible impact of the line on the proposed uses of the area would not warrant the high costs of undergrounding.'' The Commission further justified its conclusion by stressing that the line could follow the existing Orange and Rockland transmission line which would not cause a new intrusion through the proposed park area.

We conclude that the placement of high power electric transmission steel towers, extending an average of 125 feet in the air, ranging up to 65 feet in width and necessitating a minimum swath of 100 feet, is not a minor intrusion into an area designed

for historic preservation and general park uses. Nor can we agree with the view expressed by the Commission that the already existing transmission line through this area justifies the use of an additional intrusion along such right of way. To extend the proposed high power facility alongside the existing facility, being but a 69,000-volt low power transmission line with poles rising an average of only 65 feet and already sufficiently buffered to assure the environmental integrity of the proposed park, creates no less a new intrusion. Our analysis of the statute and the legislative findings pertaining thereto leads us to the conclusion that the existence of transmission lines may never be used as justification for their continued proliferation and the attending environmental impact.

In determining that the Commission was palpably unreasonable and abused its discretion in directing the placement of overground high power transmission lines through the proposed county park and designated national historic landmark, this court is giving effect to the legislative finding that " it is essential in the public interest to minimize any adverse effect upon the environment and upon the quality of life of the people of the state which such new facilities might cause." (Legis. Findings, L. 1970, ch. 272, § 1.) For this court to overlook such an egregious violation of the State's scenic and historical heritage would do violence to the intendment of the statute, and we refuse to do so. Moreover, by virtue of the fact that the statute closes off all courts of the State from hearing objection to the construction of such a facility except through the process of direct review of the Commission's determination in a proceeding instituted in the Appellate Division (Public Service Law, § 129), it is our opinion that an added emphasis is lent to our function in assuring that the location and construction of the proposed facility will be, in all respects, in the best public interest.

As pertains to the area of the proposed park and canal site, this court is satisfied from the record that the public interest can best be served by undergrounding the transmission lines through this particular segment of the staff route. To our mind, much persuasive evidence in the record exists to refute the Commission's determination that the added cost of such undergrounding for a length of approximately 1,500 feet does not justify the environmental benefit to be derived. In view of the statute's additional demand for the expeditious resolution of these matters and the broad authority vested in this court to " grant such relief as it deems just and proper " (Public Service Law, § 128), we hold that the certification by the Com-

mission of the staff route for the east-west leg of the Southern Tier Interconnection should be confirmed, except as it extends through the area of the proposed county park and historic site, and as to such location, the facility should be constructed underground. We find no merit to the other contentions of the various petitioners.

The opinions and orders should be modified, so as to provide that the transmission line insofar as it traverses the proposed Orange County park including the designated national historic landmark on the old Delaware and Hudson Canal, be placed underground, and, as so modified, confirmed, without costs.

HERLIHY, P. J., STALEY, JR., COOKE and KANE, JJ., concur.

Opinions and orders modified, so as to provide that the transmission line, insofar as it traverses the proposed Orange County park including the designated national historic landmark on the old Delaware and Hudson Canal, be placed underground, and, as so modified, confirmed, without costs.