In the Matter of COLUMBIA GAS OF NEW YORK, INC., Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, July 17, 1986

### APPEARANCES OF COUNSEL

*Allan E. Roth (Michael T. Wallender* and *Nancy L. Girard* of *De Graff, Foy, Conway, Holt-Harris & Mealey* of counsel), for petitioner.

*David E. Blabey (Margery F. Baker* of counsel), for Public Service Commission, respondent.

*LeBoeuf, Lamb, Leiby & MacRae (John W. Dax* of counsel), for Felmont Oil Corporation, respondent.

### OPINION OF THE COURT

MIKOLL, J.

On March 1, 1966, respondent Public Service Commission (Commission) granted respondent Felmont Oil Corporation (Felmont) a certificate of public convenience and necessity to construct and operate a high pressure gas pipeline to supply an ammonia plant operated by Felmont in the City of Olean, Cattaraugus County. In 1983, Felmont sold the ammonia plant but retained most of the pipeline system which, for the most part, has since remained unused. In 1984, Felmont entered into a contract with Dresser Clark Division of Dresser Industries, Inc. (Dresser) to supply Dresser, which operates a large manufacturing facility adjacent to the former ammonia plant, with all of its gas requirements. At the time the contract was entered into, Dresser was purchasing gas from Producers Gas Company (Producers) located in Texas. Transportation of this gas was provided by petitioner. The Felmont-Dresser contract was contingent upon Felmont's obtaining approval of a modification of its certificate of public convenience and necessity from the Commission.

Felmont filed an application with the Commission to modify its certificate. Petitioner was permitted to intervene in the administrative proceedings and opposed Felmont's application on the ground that displacement of petitioner as the transporter of the gas used by Dresser would result in a detriment to petitioner's remaining customers that far outweighed any benefits resulting to Dresser. A hearing was held at which the parties were heard and evidence was received. The Administrative Law Judge (ALJ) ruled that an affidavit of James W. Kirkpatrick, president of Dresser, was properly received into evidence over objection that it was hearsay, since it contained only an update of information presented in the testimony of John Hare, general manager of Felmont's Eastern Division. The ALJ found that the over-all benefits arising from the

contract under review outweighed the possible detriment to be suffered by petitioner's customers and that approval of the contract was in the public interest and served public convenience. He rejected a so-called "Willaman plan", submitted by petitioner as an alternative to the Felmont-Dresser contract, finding that it was not as beneficial as the Felmont-Dresser contract.

The Commission adopted the decision of the ALJ in an opinion dated May 2, 1985. On May 31, 1985, petitioner filed for a rehearing on two grounds. First, it alleged that Dresser had renegotiated its contract with Producers, allegedly reducing Dresser's cost to a level at or below that offered by Felmont. Second, petitioner contended that the Commission, subsequent to its May 2, 1985 order, had issued another order requiring petitioner, *inter alia*, to attempt to obtain gas from Felmont and since, in its view, the two orders were inconsistent, a rehearing should be held to resolve the apparent contradiction. The Commission denied the application for a rehearing, finding that no new circumstances had been presented. Petitioner then instituted this CPLR article 78 proceeding to annul the Commission's determination on the basis that the Commission had improperly denied a rehearing, that the determination was contrary to legislative policies and that the determination was not supported by substantial evidence. Special Term transferred the proceeding to this court.

■ The determination of the Commission should be confirmed. The Commission did not err in refusing to grant petitioner a rehearing. The order of the Commission does not conflict with any legislative policies enunciated in Public Service Law §§ 66-d or 66-e and the determination is supported by substantial evidence.

■ Petitioner's first contention, that the Commission erred in refusing to grant a rehearing because, after issuance of the Commission's order, Dresser renegotiated its contract with its current gas supplier, thus lowering the cost of gas being delivered to Dresser to a level at or below Felmont's proposed delivery price, is without merit. Public Service Law § 22 provides that, upon timely application for a rehearing, "the commission shall grant and hold such a rehearing if in its judgment sufficient reason therefore *[sic]* be made to appear". The decision to grant or deny a rehearing is a matter of discretion and cannot be overturned unless the Commission has abused its discretion *(see, People ex rel. Village of Cha-*

*teaugay v Public Serv. Commn.*, 255 NY 232, 242; *People ex rel. New York & Queens Gas Co. v Straus,* 182 App Div 666, 667).

The Commission did not abuse its discretion in denying petitioner a rehearing to consider alleged changes in the potential benefit/potential detriment balance considered by the Commission in its decision. The Commission found that the only "changed circumstance" alleged in the rehearing petition was the price of the gas currently being supplied to Dresser and noted that price was but one of the items considered in Dresser's decision to contract with Felmont. Reliability of the gas supply, the pressure at which the gas would be delivered and the ability of Felmont to deliver the volumes of gas needed were other factors important to Dresser. These factors did not change. Further, petitioner could supply neither the high-pressure gas needed by Dresser nor the amounts of gas needed by Dresser. The change in price did nothing to change these other factors. The Commission therefore properly concluded that the burden/benefit balance was not substantially changed by the price change and that a rehearing was not warranted on that basis.

■ Petitioner's claim that a rehearing should have been granted to resolve an alleged conflict between the Commission's order in this case and the order issued a few days thereafter must also be rejected. The second order, issued in another proceeding, was based on the following stipulation made by petitioner with the Commission staff: "To the limited extent that the high Btu content of the gas will permit, [petitioner] agrees to acquire gas, if available, from Felmont Oil Corporation (Pennzoil) directly into its distribution system, thereby avoiding transportation charges from Columbia Gas Transmission Corporation with respect to the directly-acquired volumes, consistent with a least cost fuel procurement policy." This second order simply required petitioner to attempt to acquire Felmont's gas; it did not, as petitioner argues, require actual acquisition. The gas was only to be acquired from Felmont *if available.* Moreover, the stipulation contemplated petitioner's acquisition of Felmont's gas directly into petitioner's distribution system without incurring transportation charges. The hearing testimony reveals that there was no interconnection between petitioner's and Felmont's distribution facilities. The two Commission orders are thus not inconsistent and the second order is not a changed circumstance requiring a rehearing.

■ Petitioner's next contention, that Felmont should have

been denied permission to extend service to Dresser since such service is not necessary and convenient as required by the policies enunciated in Public Service Law §§ 66-d and 66-e, is unpersuasive. The approval of Felmont's petition is outside the confines of either section. Public Service Law § 66-d authorizes the Commission to order a utility to transport gas so long as an undue burden is not placed on the utility's customer. Petitioner has not been ordered to transport any gas on behalf of Felmont. Public Service Law § 66-e authorizes the Commission to monitor gas procurement contracts and practices of gas corporations to ensure that they are not contrary to the public interest. First, the Felmont-Dresser contract does not involve a procurement contract with an out-of-State producer, the purpose for the enactment of this section. Second, the Commission made a specific determination that the contract in this case was in the public interest.

Additionally, the Commission complied with the requirement of Public Service Law § 68 that the granting of Felmont's application must serve the public. Both the ALJ's decision and the Commission's decision discussed the factors which led to their conclusion that the public would be better served by granting Felmont's application rather than the continuation of Dresser's arrangement with its out-of-State supplier.

Finally, petitioner's claim that the Commission's determination was not supported by substantial evidence, since the only direct evidence of the advantages to be obtained by Dresser were contained in an inadmissible affidavit and that, even if the affidavit were admissible, there is a lack of evidence showing that the benefits to Dresser would outweigh the detriment to petitioner's remaining customers, is without merit. Regarding petitioner's claim that the affidavit was inadmissible, it is clear that hearsay evidence is not barred in administrative proceedings; indeed, if hearsay evidence is sufficiently relevant and probative, it may constitute substantial evidence *(see, People ex rel. Vega v Smith,* 66 NY2d 130, 139). Accordingly, the affidavit was admissible and was properly allowed into evidence.

With respect to petitioner's claim that the determination was unsupported by substantial evidence, substantial evidence has been defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 180). In essence, petitioner's complaint

here is that the evidence of benefits resulting to Dresser did not outweigh the detriment to petitioner's remaining customers and thus was insufficient. However, the record reveals that ample proof of such benefits was presented. Hare testified that Dresser's supply from petitioner was inadequate in both volume and pressure and that Dresser might be forced to consider moving its testing facilities to another plant or invest in equipment to convert the gas supplied by petitioner to the appropriate pressure level. The high-Btu gas to be supplied would not be well suited for general utility pipeline purposes, but would be ideal for Dresser's purposes. Additionally, there was evidence that the loss of Dresser as a customer would mean an average increase of approximately $1.40 to $1.50 per remaining customer per year. It was pointed out, however, such an increase might be offset by other factors. Accordingly, contrary to petitioner's arguments, it clearly appears that the Commission's determination was supported by substantial evidence.

MAIN, J. P., WEISS, YESAWICH, JR., and LEVINE, JJ., concur.

Determination confirmed, and petition dismissed, with costs.