In the Matter of NIAGARA MOHAWK POWER CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, December 20, 1990

### APPEARANCES OF COUNSEL

*Swidler & Berlin (Carmen D. Legato* and *Paul Kaleta* of counsel), and *Bower & Gardner (Kenneth L. Shapiro* and *Filip Tiffenberg* of counsel), for petitioner.

*William J. Cowan (Lawrence G. Malone* of counsel), for Public Service Commission, respondent.

*Dickstein, Shapiro & Morin (Frederick M. Lowther, Beth L. Webb* and *Johannes W. Williams* of counsel), for JMC Selkirk, Inc., respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

Respondent JMC Selkirk, Inc. (hereinafter Selkirk) decided to construct in two phases a natural gas-fired cogeneration facility at the site of a General Electric (hereinafter GE) factory in the Town of Bethlehem, Albany County, within petitioner's gas franchise area. Electricity and steam genera-

ted during the first phase will be sold to petitioner and GE. During the second phase, electricity will be sold to Consolidated Edison and steam probably will be sold to GE. Selkirk entered into long-term contracts to purchase high pressure natural gas for the facility. Because petitioner's existing pipeline system is inadequate to transport the type of product Selkirk purchased, the natural gas is to be transported through other existing pipelines to a point about 2.1 miles from the site of the facility. A new pipeline spur was needed to transport the natural gas to the facility.

After negotiations between petitioner and Selkirk over construction and operation of the pipeline spur were unsuccessful, Selkirk sought approval from respondent Public Service Commission (hereinafter the PSC) to construct the pipeline spur. Petitioner intervened and, although not contesting the need for the pipeline spur, sought ownership of and control over the pipeline spur, contending that Selkirk's ownership and control would result in millions of dollars of losses to its ratepayers. In the alternative, petitioner requested evidentiary hearings on ownership and control of the pipeline spur. The PSC directed that a hearing be held limited to the issues raised by petitioner. Following the hearing, the PSC granted Selkirk approval to construct the pipeline spur, finding that petitioner failed to substantiate its claim of harm to its ratepayers. After petitioner's request for a rehearing was denied, it commenced this proceeding to annul the PSC's determinations.

Petitioner first contends that the PSC misapplied the "public interest" requirement of Public Service Law § 126 (1) (g) by failing to make a comparative evaluation of the competing proposals and determining only that Selkirk's proposal is in the public interest. We disagree. The language of the statute has no comparative analysis component, stating only that approval for a project can be given if it "will serve the public interest, convenience, and necessity" (Public Service Law § 126 [1] [g]). Contrary to petitioner's contention, we did not impose any comparative analysis requirement in *Matter of Columbia Gas v Public Serv. Commn.* (118 AD2d 305); in any event, *Columbia Gas* involved an application considered pursuant to Public Service Law § 68 rather than Public Service Law § 126 (1) (g), as here. Petitioner's reliance on another PSC proceeding which purports to impose the proof requirements of Public Service Law § 68 upon a case such as this one is without merit because, as previously noted, we have not

required the comparative analysis approach as advocated by petitioner under Public Service Law § 68. The case of *Matter of County of Orange v Public Serv. Commn.* (44 AD2d 103, 106, *mod* 37 NY2d 762), also relied on by petitioner, is distinguishable since it focused on the issue of minimum adverse environmental impact under Public Service Law § 126 (1) (c), a finding not required herein *(see,* Public Service Law § 121-a [7]).

■ We further find that the PSC did not err in failing to hold a full evidentiary hearing. Public Service Law § 121-a (5) permits the PSC to limit the record of the proceeding in a case such as this by not holding a hearing. In the absence of any requirement for a full evidentiary hearing, we find no merit to petitioner's claim.

■ Petitioner also argues that the PSC's determination is unsupported by substantial evidence, arbitrary and capricious and without rational basis. Since a hearing was not required, even though held, the appropriate standard upon review is whether the determination is arbitrary and capricious *(see, Matter of Christopher v Phillips,* 160 AD2d 1165, *lv denied* 76 NY2d 706). Contrary to petitioner's claim, there does not seem to be any policy preference for utility ownership of cogeneration facilities. Indeed, production of energy from cogeneration facilities is a stated goal of the Legislature *(see,* Public Service Law § 66-c [1]) and utilities can be required to purchase cogenerated electricity *(see,* § 66-c [1]). From this perspective, the PSC's determination in favor of Selkirk's ownership of the pipeline spur seems reasonable and not arbitrary and capricious. Furthermore, there was evidence of economic advantages if Selkirk was to own and operate the pipeline spur, which also supports the PSC's determination. Finally, the fact that petitioner has been granted hearings on other cogeneration projects does not make the determination here arbitrary and capricious, for these other projects seem to involve different factual situations, such as large numbers of potential customers being served by nonutilities. Since Selkirk's approval is conditioned on the pipeline spur serving only its cogeneration facility, there is a reasonable basis upon which to differentiate the cases. For all these reasons, it strikes us that the PSC's determination is not arbitrary and capricious and must be confirmed. We likewise see no reason to intervene in the PSC's denial of reconsideration.

WEISS, J. (dissenting). I respectfully dissent.

At issue here is the construction, ownership and operation

of a proposed 2.1-mile, 12-inch diameter high pressure gas distribution spur from the gas transmission line to the industrial park complex where the plant of respondent JMC Selkirk, Inc. (hereinafter Selkirk) is located. Petitioner stood ready to provide Selkirk the requisite distribution/transportation service by building and operating the necessary capital improvements to their distribution system. However, when Selkirk and petitioner were unable to agree on the gas transportation rate to be charged, Selkirk concluded that it could save money and decided to build and operate its own distribution pipeline.

Regulated utility rates are based upon average system costs for the common benefit of public utility customers regardless of location within the distribution system. Thus, all ratepayers benefit; access costs for a distant customer which would otherwise be prohibitive are offset by the lower costs to nearby customers. Combined, these costs justify the creation of the distribution system in the first instance. Petitioner's profits remain the same, with the difference between actual cost and average cost inuring to the system's ratepayers as a whole. Seeking to avoid this contribution to system costs, Selkirk filed its application with respondent Public Service Commission (hereinafter the PSC) for authority to construct, own and operate the gas distribution spur itself. Petitioner intervened in the proceedings, seeking to have PSC approval for the construction of the pipeline spur conditioned upon its ownership and operation of the spur.

The PSC directed that a limited hearing be held for the purpose of providing petitioner an opportunity to explain its position, substantiate its claim of harm and demonstrate why evidentiary hearings were required. In the referral order, the PSC noted that it had found that gas transportation contracts for other cogenerating plants had been approved upon the basis that utility ratepayers would benefit from the provision of such service by the public utility. In December 1989, the PSC issued an order granting Selkirk a certificate of environmental compatibility and public need and rejected petitioner's request to own the pipeline spur, having found that petitioner had failed to conclusively demonstrate harm to its ratepayers. The PSC ordered Selkirk to refrain from serving other customers without its authority.[1] Petitioner's motion for a rehear-

---

1. Selkirk's facility could adequately be served by an eight-inch line. Their plans provide for a 12-inch line which costs only marginally more, but

(n. cont'd)

ing was denied on the grounds that it failed to show entitlement to a revenue contribution from Selkirk or harm from the absence of such revenue. The PSC determined that nothing could be accomplished by a full evidentiary hearing. Petitioner commenced this proceeding seeking judicial review of both determinations.

Petitioner contends that the PSC standard of review of the competing proposals under Public Service Law § 126 (1) (g) requires the PSC to undertake a comparative public interest analysis to determine whether public utility or private ownership of the gas distribution pipeline will best serve the public interest, convenience and necessity. Petitioner further contends that the limited hearing was not a full evidentiary hearing[2] and, accordingly, it was error to find that it was required, but had failed, to present conclusive evidence, even while noting that petitioner stood ready to make the evidentiary showing. I agree.

In applying the public interest test, the PSC found that public policy favored cogeneration facilities and that a policy of public utility ownership of all pipelines "*could* discourage the development of projects like [Selkirk's]" (emphasis supplied).[3] Here the PSC's logic falters, as it presents unresolved

---

possesses three times Selkirk's maximum usage and creates a competitive potential in a large industrial area.

2. By order dated September 22, 1989, the PSC ordered "[a] hearing for the limited purpose of examining the issues raised by [petitioner]" and to decide whether evidentiary hearings were necessary "to resolve any controverted issue". Within the order, the PSC noted that petitioner's issues were properly considered by virtue of the statutorily required finding relevant to serving the "public interest, convenience, and necessity" pursuant to Public Service Law § 126 (1) (g). A failure to make a comparative analysis between the application and the alternate proposal contained in the objection, which Selkirk contends is unnecessary, would result in a race to the PSC's doors in the case of competing applications. None of the parties contend that the need for the gas line itself is not in the public interest. The argument advanced, that the public interest inquiry is limited to determining the need for the project, is without basis and it would be arbitrary to ignore evidence tending to show that a competing proposal would better serve the public interest, convenience and necessity (*see, Matter of Columbia Gas v Public Serv. Commn.,* 118 AD2d 305; *Matter of County of Orange v Public Serv. Commn.,* 44 AD2d 103, 106, *mod* 37 NY2d 762).

3. Petitioner did not rely solely on a policy formulation on its showing, but rather raised its issues with regard to the specific facts and circumstances of the instant proposal. While there is an obvious economic issue involved with the ownership of the pipeline, the negative impact on Selkirk's project was raised only in conclusory terms in unsubstantiated oral argument by Selkirk's counsel and is patently insufficient to provide a

*(n. cont'd)*

factual issues readily resolvable by a hearing to determine what transportation rate should be chargeable by petitioner to Selkirk and be set as a condition to petitioner's ownership of the pipeline, whether petitioner's proposed ownership in fact would hurt or discourage Selkirk's project or others like it, and what the actual financial impact either form of ownership would have on this cogeneration project, this public utility and the utility's ratepayers. Many public interest issues have been factually shown to exist (i.e., the public utility's loss of margin and system contributions, possible peak shaving benefits, the use of the pipeline as a load center to expand gas service to others who could not otherwise be economically served, the duplication of facilities, the creation of additional system diversity, particularly as there exists the potential to interconnect with another gas transmission pipeline with a short extension to the subject spur, and lost opportunities with the economics of scale),[4] all of which must be determined in order to compare the competing proposals.

The PSC's determinations clearly recognized the potential competitive threat to the public utility resulting from the private bypass of public utility gas distribution system as well as the need to avoid duplicative facilities[5] in granting Selkirk a certificate of public need. The PSC found that the threat had not been conclusively shown, even while the purpose of the limited hearing was to identify controverted issues, the resolu-

rational basis for the determinations. Moreover, the PSC did not make a finding that petitioner's ownership of the spur or gas transportation rates would jeopardize Selkirk's project, or otherwise negatively effect the project in a significant manner. Selkirk now argues that the gas cost is passed through in the cost of the electricity sold to the public utility, but condemns same as cross-subsidization and "churning". Petitioner counters with reference to a subsequent cogeneration gas transportation agreement with similar higher rates involving a similar facility which was disapproved by the PSC because the rate provided was too low.

4. Economics of scale relates to the financial benefits gained by the operation of a single large system enjoying increased volumes and lower costs per unit. Benefits flow from system efficiencies and increased utilization of assets resulting from lower incremental costs, bulk purchases and expertise.

5. The economics of scale and the wasteful effect of duplicative capital intense distribution systems and resultant competition help create the concept of government regulated monopolistic public utilities (see, People ex rel. Oneonta Light & Power Co. v Public Serv. Commn., Second Dist., 180 App Div 32). While there has been a movement away from the monopoly power of public utilities, the public interest test on a project-by-project basis necessarily includes ratepayers' benefits and many of the facts which lead to the creation of regulated monopolies in the first instance.

tion of which would require an evidentiary hearing. Moreover, the PSC order made reference to the need for an evidentiary hearing to examine the effect of bypass of petitioner on six other proposed private cogeneration projects within its franchise territory, stating that further inquiry was warranted. Yet, here, the PSC has foreclosed evidence of the related lost opportunities to petitioner's ratepayers by stating that a proper balance had been struck in favor of Selkirk in the instant case.

The limited scope of review of PSC determinations under Public Service Law article VII is established by Public Service Law § 128 (2) *(Matter of County of Orange v Public Serv. Commn.,* 37 NY2d 762, 765) and includes considering whether the determination is supported by substantial evidence in the record *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180) or is arbitrary, capricious or an abuse of discretion *(see, People ex rel. Village of Chateaugay v Public Serv. Commn.,* 255 NY 232, 242). I find, in the face of the stated limited purpose of the hearing held here, that unresolved factual issues clearly exist as to the benefits to the public and ratepayers (the issue on which the hearing was held). In addition, my review of the record shows that the lack of evidence supporting a conclusion that the possible gas transportation rates could, or would, affect the project's economic viability or otherwise discourage the Selkirk cogeneration facility or other similar projects. For these reasons, I would hold that the PSC determinations must be annulled as arbitrary, capricious and without substantial evidentiary support in the record.

CASEY, LEVINE and MERCURE, JJ., concur with MAHONEY, P. J.; WEISS, J., dissents and votes to annul in an opinion.

Determinations confirmed, and petition dismissed, without costs.