*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 13, 2014                    517776
_____

In the Matter of ENTERGY
    NUCLEAR POWER MARKETING,
    LLC, et al.,
                         Petitioners,

            v                                MEMORANDUM AND JUDGMENT

NEW YORK STATE PUBLIC SERVICE
    COMMISSION et al.,
                         Respondents.
_____

Calendar Date:   September 5, 2014

Before:   Stein, J.P., McCarthy, Egan Jr., Lynch and Clark, JJ.

_____

        Greenberg Traurig, LLP, Albany (William A. Hurst of
counsel) and Nixon Peabody, LLP, Albany (Andrew C. Rose of
counsel), for petitioners.

        Kimberly Harriman, Public Service Commission, Albany (John
Graham of counsel), for New York State Public Service Commission,
respondent.

        Hiscock & Barclay, LLP, Albany (George M. Pond of counsel),
for Champlain Hudson Power Express, Inc. and another,
respondents.

_____

Lynch, J.

        Proceeding pursuant to CPLR article 78 (initiated in this
Court pursuant to Public Service Law § 128) to review two
determinations of respondent Public Service Commission which,
among other things, granted the request of respondents Champlain
Hudson Power Express, Inc. and Champlain Hudson Power Express

Properties, Inc. for a certificate of environmental compatibility and public need.

In 2010, respondents Champlain Hudson Power Express, Inc. and Champlain Hudson Power Express Properties, Inc. (hereinafter collectively referred to as the applicants) filed an application for a Public Service Law article 7 certificate of environmental compatibility and public need (hereinafter EC&PN) to construct, operate and maintain a power transmission cable running approximately 332 miles from a hydroelectric power facility in Canada to Queens County. Shortly thereafter, the applicants advised the Secretary of respondent Public Service Commission (hereinafter the Commission) that they and certain governmental and private entities intended to enter into confidential settlement negotiations. Said settlement negotiations were conducted over the course of 16 months among 30 participating parties representing diverse interests, including petitioners.

In February 2012, the applicants, along with several of the parties involved in the negotiations, filed a joint proposal settling the disputed issues in the case. Although petitioners and other parties opposed the joint proposal, the assigned Administrative Law Judges issued a recommendation that the Commission adopt most of its terms and grant the applicants' EC&PN. Petitioners and other parties thereafter formally opposed the Administrative Law Judges' recommended decision. Ultimately, the Commission concluded that the applicants' proposal met the required statutory findings of Public Service Law § 126 and granted the EC&PN on April 18, 2013.

On May 21, 2013, petitioners filed a petition for rehearing with the Secretary of the Commission. Finding that petitioners failed to timely file their petition and otherwise failed to establish good cause for their delay (see Public Service Law §§ 22, 128 [1]; 16 NYCRR 3.7 [a]), the Commission issued a decision denying rehearing. At the request of the applicants and its own staff, the Commission also undertook to address the merits of petitioners' request for rehearing and determined that, had the petition been timely filed, rehearing would have been denied in any event as there was no showing of error of law or fact or new circumstances warranting a different determination

(see 16 NYCRR 3.7 [b]).  Petitioners then commenced this proceeding in this Court pursuant to Public Service Law § 128 to annul the Commission's determination as well as the granting of the applicants' EC&PN.

Initially, the filing of a petition for rehearing is required prior to the commencement of a proceeding in this Court, as evinced by the plain language of Public Service Law § 128 (1), which provides that "[a]ny party aggrieved by any order issued on an application for a certificate may apply for a rehearing under [Public Service Law § 22] within [30] days after issuance of the order and thereafter obtain judicial review of such order in a proceeding as provided in this section. . . .  Such proceeding shall be initiated by the filing of a petition in such court within [30] days after the issuance of a final order by the [C]ommission upon the application for rehearing" (see Public Service Law § 129; Matter of Powerline Coalition v New York State Pub. Serv. Commn., 244 AD2d 98, 103 [1998], appeal dismissed 92 NY2d 919 [1998]).  Thus, only after a petition for rehearing has been timely filed does this Court have jurisdiction pursuant to Public Service Law § 128 (1) to review the merits of the Commission's underlying determination as it relates to the issuance of the EC&PN (see Matter of Powerline Coalition v New York State Pub. Serv. Commn., 244 AD2d at 103).

As referenced within Public Service Law § 128 (1), Public Service Law § 22 allows any interested person or corporation to apply for a rehearing within 30 days after service of an order issued by the Commission "unless the [C]ommission for good cause shown shall otherwise direct" (accord Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y., 231 AD2d 284, 289-290 [1997]).  Determining what constitutes "good cause" under Public Service Law § 22 is within the discretion of the Commission and, as such, its decision to deny the petition for rehearing must not be disturbed absent an abuse of that discretion (see id. at 290; Matter of Gross v State of N.Y. Pub. Serv. Commn., 195 AD2d 866, 867 [1993], lv denied 82 NY2d 660 [1993]; Matter of Columbia Gas of N.Y. v Public Serv. Commn. of State of N.Y., 118 AD2d 305, 308 [1986]).

Here, the Commission issued its initial order granting the applicants' request for an EC&PN on April 18, 2013. Because the 30th day following the issuance of the order fell on a Saturday, by operation of law the filing deadline was pushed to the following Monday, May 20, 2013 (see General Construction Law § 25-a [1]). Late in the afternoon of May 20, petitioners' counsel sent the petition for rehearing to a third-party commercial vendor service, Registered Post (hereinafter RPost), to be forwarded to the Secretary of the Commission as well as the numerous other parties in the proceeding. Less than one minute later, petitioners' counsel received an automated acknowledgment of receipt from RPost stating: "Acknowledgment: Your message has been sent. Rpost will send a Registered Receipt record within two hours as your proof of delivery, content, and official time." Without having received such official notice, however, counsel was informed by RPost the following day that the message was never delivered due to the high number of recipients. Consequently, petitioners' petition for rehearing was not deemed filed until May 21, 2013.

Aware of the foregoing circumstances, the Commission determined that, although it had the authority to grant an extension upon a showing of good cause, petitioners' account of why the petition was late did not amount to such a showing. In our view, the Commission abused its discretion by not excusing for "good cause" the one day delay in the filing of the petition for rehearing. The focus here is on counsel's use of a commercial electronic mail service, RPost, to assure contemporaneous service upon the Commission and more than 100 parties. Counsel timely initiated service through RPost and received a misleading acknowledgment advising that the message had been sent. Unbeknownst to counsel, RPost withheld delivery to ensure, as the Commission noted, that the email was not "impermissible 'spam.'" While certainly, counsel should have ensured that he received the registered receipt verifying that the petition was filed or taken immediate steps to effect service upon the Commission directly, this is, at most, an example of "law office failure" that may readily be and should have been excused (CPLR 2005). Clearly, the minimal delay in no way compromised an expeditious resolution of the case, which had been under review for four years. Moreover, since the Commission

fully reviewed the merits of the petition for rehearing at the request of all participants and denied the petition by finding that petitioners failed to demonstrate an error of law or fact or any new circumstances that warranted a different determination (see 16 NYCRR 3.7 [b]), this Court has jurisdiction to address the merits of the order granting the certificate (see Public Service Law §§ 22, 128, 129).[1]

We begin by recognizing that, as parties to the proceedings at the agency level, petitioners have standing (see Matter of Keyspan Energy Servs. v Public Serv. Commn. of State of N.Y., 295 AD2d 859, 861 [2002]). The criteria for authorizing the construction and operation of a major utility transmission facility are set forth in Public Service Law § 126. Under this statute, the Commission may not grant a certificate approving an electric transmission project unless it finds and determines (1) the need for the facility, (2) whether the facility will achieve the minimum adverse environmental impacts, (3) whether the facility will be located underground and comport with the state's long-range plan to expand the electric power grid, (4) that there has been conformance with applicable state and local laws and regulations, and (5) that the facility promotes the public interest, convenience and necessity (see Public Service Law § 126 [1] [a]-[d], [f], [g]). This project involves the placement of a high voltage, direct current transmission line extending from the Canadian border to a converter station in Queens and, from there, a high voltage, alternating current transmission line to the Rainey Substation. The line will be placed underwater in Lake

_____

   [1] We note that the procedure for judicial review is outlined in Public Service Law § 128 (1). The statute provides, as relevant here, that a party aggrieved by an order granting a certificate must first file a petition for a rehearing. Once a final order is issued on the rehearing application, that party may seek judicial review of the underlying order granting the certificate. What triggers judicial review is the issuance of a final order on the rehearing petition, not whether the rehearing petition is granted or denied. As set forth above, we have confirmed the Commissioner's determination that petitioners did not demonstrate a need for a rehearing.

Champlain and the Hudson River and underground in the upland
segments.

In their petition for a rehearing, petitioners mainly
reiterated that the Commission failed to adequately assess the
economic risk of the project to the detriment of the ratepayers,
as well as the project's adverse environmental risks,
particularly to endangered species, including the atlantic
sturgeon.  As such, petitioners did not sufficiently establish
that there was an error of law or fact or new circumstances and,
therefore, rehearing was properly denied (see 16 NYCRR 3.7 [b]).
Turning to the merits of the order granting the EC&PN (see Public
Service Law § 128 [1]), we are unpersuaded by petitioners'
contentions that there is not substantial evidence in the record
to support the Commission's determination.

Although Public Service Law § 126 does not require the
Commission to determine whether the project is economically
feasible, the record confirms that the Commission directly
addressed petitioners' economic risk concerns as part of its
needs assessment.  Importantly, an applicant is only authorized
to recover the project costs through wholesale power transactions
and not through rates charged to the consumer.  In fact,
certificate condition No. 15 (b) prohibits the facility from
directly receiving cost-of-service rates.  Moreover, the
Commission reasonably discounted petitioners' concern that
consumers would be required to indirectly subsidize the project
should wholesale buyers pay above-market prices.  The Commission
pointed out that buyers would be discouraged from entering into
such agreements for the Commission is authorized to reject the
overpayments.  Moreover, whether the project is economically
feasible depends on future gas price forecasts subject to
dramatic change that no one can definitively predict, which is a
risk that the project investors must assume.  From a nonmonetary
perspective, there are three uncontested aspects of the project
that validate the Commission's findings of need and public
interest.  The project will increase transmission capacity to
meet New York City's heavy needs, the use of a hydropower
resource will enhance fuel diversity and reduce harmful emissions
resulting from New York City's use of oil- and gas-based
electricity sources, and these characteristics promote the 2009

State Energy Plan and New York City's PlaNYC goals.  The record also demonstrates that the Commission seriously assessed the probable environmental impacts of the project and determined that the facility minimized any adverse environmental impact.

Petitioners contend that the Commission failed to adequately consider the potential harm to aquatic species, including the endangered shortnose and atlantic sturgeon, posed by the placement of cables underwater.  The plan requires the underwater cables to be buried at least six feet beneath the lake/river bottom, except in areas of utility crossings and hard rock.  In these areas, the cable will be covered by concrete mats.  The specific risks emanate from the use of the concrete mats as well as magnetic and electromagnetic field impact.  The record supports the Commission's determination that any risk has been minimized by the placement of the cable route utilizing existing habitat information designed to avoid significant coastal fish and wildlife habitat areas designated by the Department of State (see 19 NYCRR part 602) and the exclusion zones identified by the parties in the joint proposal.  There is also expert record evidence supporting the Commission's conclusion that the magnetic fields' impact on sturgeon and other aquatic species would be minimal.  Further, we agree with the Commission's observation that the July 5, 2011 letter from the Army Corps of Engineers addressing the cable route under Lake Champlain and the Hudson River was a preliminary assessment. Moreover, the certificate is conditioned on the applicants' procurement of a construction permit from the Army Corps of Engineers, which has jurisdiction over these navigable waterways, prior to commencing construction.

Finally, petitioners contend that the Commission violated the "public trust doctrine" by approving that part of the cable route under Stony Point State Historic Park and Rockland Lake State Park.  We first note that petitioners failed to preserve this issue for review by omitting the contention from their rehearing petition (see Public Service Law §§ 128, 129).  In any event, the certificate requires the applicants to obtain approval for overland placement of the cable directly from the owners of such property in accordance with state law.  Through its approval, the Commission did not grant the applicant permission

to occupy state park land.  Given the above, we conclude that the record contains substantial evidence to support the Commission's determinations (see Public Service Law § 128 [2] [b]).

Stein, J.P., McCarthy and Egan Jr., JJ., concur.


Clark, J. (concurring).

I disagree that law office failure applies to the matter at hand.  Public Service Law § 22 specifies that respondent Public Service Commission (hereinafter the Commission) can provide for acceptance of a late-filed petition upon the demonstration of good cause only, and it neither refers to nor incorporates therein the provisions of CPLR 2005, i.e., the statute that permits courts to excuse delay or default as a result of the less stringent standard of law office failure.  The CPLR is intended to govern only "the procedure in civil judicial proceedings in all courts of the state and before all judges" (CPLR 101; see CPLR 105 [d]) and, absent explicit mandate, does not apply to administrative proceedings like the one herein (see generally Matter of United States Power Squadrons v State Human Rights Appeal Bd., 84 AD2d 318, 325 [1981], affd 59 NY2d 401 [1983]; Matter of Nute v Bank of Commerce, 30 AD2d 1011, 1012 [1968]).  Moreover, the concept of law office failure, which only applies in a limited context even in the civil arena (see CPLR 2004, 3012 [d]; 3215 [c]; 3216 [e]; 3404, 5015 [a] [1]; Tewari v Tsoutsouras, 75 NY2d 1, 12-13 [1989]; Cruz v Bronx Lebanon Hosp. Ctr., 73 AD3d 597, 598 [2010]; Storchevoy v Blinderman, 303 AD2d 672, 673 [2003]; LaValle v Astoria Constr. & Paving Corp., 266 AD2d 28, 28 [1999]; Martinez v New York City Tr. Auth., 183 AD2d 587, 587 [1992]), was intended to prevent clients from being denied their day in court in the instance of an inadvertent occurrence such as a misplaced file or an inaccurate diary entry where there is no prejudice to the opposing party (see CPLR 2005; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2005 at 350-352).  Thus, in the absence of an explicit reference to the CPLR, I disagree with the majority and would review petitioners' conduct, as the Commission did, according to the standard of good cause.

In this regard, while I agree with petitioners that their petition for rehearing was electronically sent to Registered Post (hereinafter RPost) within the applicable 30-day statutory time period, that is not the appropriate inquiry here. Rather, this Court is constrained to determine any abuse of the Commission's broad discretion against the backdrop of the explicit statutory mandate that a document is deemed filed upon receipt by the Secretary of the Commission (see 16 NYCRR 3.5 [d]). Even after acknowledging that petitioners' counsel very likely expected RPost to promptly file the petition with the Secretary as required, I find counsel's failure to follow up with RPost or the Commission itself after not having received either the notice of proof of delivery within two hours, as advised, or a recognition of filing by the Commission to be illustrative of an absence of good cause. This seems especially so in light of the record, which demonstrates that petitioners' counsel was experienced in this process and was not without recourse to ensure compliance with the applicable statutory time limit (see Public Service Law § 128 [1]). Moreover, I share the concern of the Commission that the perceived legislative intent to expedite siting cases weighs against accepting petitioners' untimely petition (see generally Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 261 [2010], cert denied ___ US ___, 131 S Ct 822 [2010]). While the majority views one day as minimal in light of the length of this litigation as a whole, it is my view that petitioners' failure to meet the statutory mandate of filing within 30 days effectively concluded the litigation and, therefore, that one day bears tremendous significance.

Thus, I find no basis upon which to disturb the Commission's determination that petitioners' petition was untimely (see Matter of Powerline Coalition v New York State Pub. Serv. Commn., 244 AD2d 98, 103 [1998], appeal dismissed 92 NY2d 919 [1998]; see also Matter of O'Brien v DiNapoli, 116 AD3d 1124, 1125 [2014], lv granted 23 NY3d 908 [2014]). In the absence of a timely petition for rehearing, I find that the merits of the underlying certificate of environmental compatibility and public need are precluded from review by this Court (see Public Service Law §§ 22, 128, 129; Matter of Powerline Coalition v New York State Pub. Serv. Commn., 244 AD2d at 103; Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y., 231 AD2d 284,

289-290 [1997]; <u>Matter of Gross v State of N.Y. Pub. Serv. Commn.</u>, 195 AD2d 866, 868 [1993]).  Accordingly, I would confirm the Commission's determination that petitioners' petition was untimely and dismiss the petition.  However, if I were to agree that the petition for rehearing was timely giving this Court jurisdiction, I would concur with the majority's outcome.


        ADJUDGED that the determinations are confirmed, without costs, and petition dismissed.




                        ENTER:


                        Robert D. Mayberger
                        Clerk of the Court